1

2

3

4

5

6                             **UNITED STATES DISTRICT COURT**

7                                    **DISTRICT OF NEVADA**

8    JAMES J. TURNER, JR.,

9            Petitioner,                              3:10-cv-0631-RCJ-VPC

10   vs.
                                                     **ORDER**
11   RENEE BAKER, *et al.*, [1]

12           Respondents.

13   _____/

14   <u>Introduction</u>

15           This habeas corpus action is brought by James J. Turner, Jr., a Nevada prisoner serving a

16   sentence of life in prison with the possibility of parole, on a conviction of first degree murder.

17   Turner was convicted in Nevada's Eighth Judicial District Court, in Clark County, Nevada, on

18   July 30, 2002, after he entered a plea agreement and plead guilty pursuant to *North Carolina v.*

19   *Alford*, 400 U.S. 25 (1970).

20           Turner's federal habeas corpus action is before this court on its merits.  The court will deny

21   the petition, and will deny Turner a certificate of appealability in all respects.

22

23   <u>Factual Background and Procedural History</u>

24           The transcript of Turner's preliminary hearing, and the transcript of the trial up to the point

25   
     _____

26           [1]  Renee Baker is substituted for her predecessor, E.K. McDaniel, as Warden of Ely State Prison.
     Fed. R. Civ. P. 25(d).

1    when Turner elected to enter the plea agreement and plead guilty, reveal the factual background of

2    the case.[2]

3            The evidence presented at Turner's preliminary hearing, and at trial showed that on the

4    evening of July 6, 2001, Turner and two associates, Curtis Powers and Marcus Lowe, killed Miranda

5    Johnson, by shooting her in the head, after breaking into the apartment she shared with her husband

6    and her infant child in Henderson, Nevada.  *See* Testimony of Gary D. Telgenhoff at Preliminary

7    Hearing, Exhibit 14 (ECF No. 26-1), pp. 10-16.[3]  Johnson's body was discovered laying on her bed

8    with her legs over the side of the bed and her feet on the ground; her three-week-old baby was found,

9    unharmed, sleeping on the floor between her feet.  *See* Testimony of Miles Costolo at Preliminary

10   Hearing, Exhibit 14, pp. 93-100; Testimony of Miles Costolo at Trial, Exhibit 16, pp. 47-61;

11   Testimony of Travis Roundy at Trial, Exhibit 16, pp. 61-67.  The door of the apartment had been

12   kicked in.  *See* Testimony of Miles Costolo at Preliminary Hearing, Exhibit 14, pp. 93-100;

13   Testimony of Miles Costolo at Trial, Exhibit 16, pp. 47-61.

14           Turner had been involved in disputes with Johnson's husband, Edward Wiggins, a musician,

15   with respect to business relating to Wiggins' music.  *See* Testimony of Edward Wiggins at

16   Preliminary Hearing, Exhibit 14, pp. 101-03.  On the evening of July 6, 2001, not long before

17   Johnson was killed, Wiggins spoke with Turner, and also to his wife, on his cell phone; Wiggins

18   testified as follows, at the preliminary hearing, regarding those calls:

19

20

21            Q.      Mr. Wiggins, in the evening hours of July the 6th, did you have a
         conversation on the telephone with Mr. Turner where he said he was at your
22       apartment?

23

24       [2]  The transcript of Turner's preliminary hearing and the trial transcript were made part of the
     record when Turner entered his *Alford* plea, to show the factual basis for the plea.  *See* Exhibit 17,
25   p. 15 (ECF 26-3, p. 39).

26       [3]  Unless otherwise stated, the exhibits referred to in this order are those filed by respondents in
     support of their answer, and located in the electronic record for this case at ECF Nos. 14 and 26.

1          A.      Yes.

2          Q.      Would you tell us about that?

3          A.      He said, "I'm here waiting for you." Things of that nature. I don't
remember the exact. Everything is really a blur. But we talked and he said, "I'm here
4      waiting for you," things like that.

5                                              *    *    *

6          Q.      Do you recall talking to your wife on the phone that day or that
evening?
7
           A.      Yes.
8
                                               *    *    *
9

10         THE WITNESS:  He called my home many times. She called me to let me
know and I let her know, "Don't worry about it, we're not afraid of these other
people, we can protect ourselves."
11
BY MR. KANE:
12
           Q.      Did there come a call or calls from her that caused you to be afraid?
13
           A.      Yes. They jiggled the door.
14
                                               *    *    *
15
           Q.      She called and said someone was jiggling the door?
16
           A.      Yes.
17
           Q.      Was there another call?
18
           A.      Yes.
19
           Q.      Was that from her?
20
           A.      I called her.
21
           Q.      What happened during that call?
22
           A.      While I was driving I heard his voice say, "Grab the kid," and I
23      dropped my phone and floored my gas to try to get there in time to stop this from
happening.
24

25    Testimony of Edward Wiggins at Preliminary Hearing, Exhibit 14, pp. 104-06. On his redirect

26    examination, at the preliminary hearing, Wiggins testified as follows about a message that

3

Turner left on his cell phone before the killing:

> Q.    Do you recall that you turned over to the Henderson Police Department recorded calls from the specific date this happened, that is July the 6th of 2001?
>
> A.    Yes.
>
> Q.    Do you recall a specific call from James Turner on that date that you turned over to the police where he specifically told you he was on his way to your house?
>
> A.    Multiple phone calls.
>
> Q.    Do you recall specifically what he said?
>
> A.    Not specifically, but it was basically just threats, "I'm coming" --
>
> *    *    *
>
> Q.    If I were to show you a tape recording of one of those phone calls that you turned over to the police, would that refresh your recollection as to the exact words that he used?
>
> A.    Yes.
>
> Q.    I want you to read that recording to yourself, not out loud.
>
> *    *    *
>
> Q.    Do you recall what message James Turner left on your cellular phone at 3:20 in the afternoon on July the 6th of 2001?
>
> A.    Yes.
>
> Q.    What did he say?
>
> A.    He said, "I messed up.  I'm coming to your house.  You better hope your bitch doesn't open the door when I get there," you bitch basically.

*Id*. at 117-19.

On the day Johnson was murdered, Turner, Powers, and Lowe, along with Turner's girlfriend, Tara McDonald, drove to Ms. Johnson's apartment in a car borrowed from a relative of Turner's, Thomas Turner.  *See* Testimony of Thomas Turner at Preliminary Hearing, Exhibit 14, pp. 33-49; Testimony of Tara McDonald at Preliminary Hearing, Exhibit 14, pp. 50-55; *see also* Prosecution's Opening Statement, Exhibit 16 (ECF No. 26-3), p. 9.  A witness, who lived in the same apartment complex as Ms. Johnson, noticed that car in the parking lot before the shooting,

heard the shooting a little while later, and then saw three men leave the vicinity of Ms. Johnson's apartment in a hurry and speed off in the car.  *See* Testimony of Jerry Hoepfner at Preliminary Hearing, Exhibit 14, pp. 16-33; Testimony of Jerry Hoepfner at Trial, Exhibit 16, pp 24-47.  Two other witnesses, who were at the apartment complex at the time and heard the shooting, picked Turner out of a photographic lineup and identified him at trial as one of three men they saw at the apartment complex before and after the shooting.  *See* Testimony of Carla Riddle at Preliminary Hearing, Exhibit 14, pp. 55-70; Testimony of Amber Mortensen at Preliminary Hearing, Exhibit 14, pp. 71-84; Testimony of Luke Vincent at Preliminary Hearing, Exhibit 14, pp. 84-92; Testimony of Luke Vincent at Trial, Exhibit 16, pp. 67-78.  One of those witnesses noted that Turner got into the driver's seat when Turner, Powers, and Lowe hurriedly left the apartment complex.  Testimony of Amber Mortensen at Preliminary Hearing, Exhibit 14, p. 79.

Wiggins testified, at the preliminary hearing, as follows regarding a telephone call he received from Turner the day after his wife was murdered:

> Q.    The next day, the day after this happened, did you have a further conversation with Mr. Turner about what had happened at your apartment?
>
> A.    Yes.  He called me early in the morning laughing, laughing.
>
> Q.    And what did he say?
>
> A.    "I told you I wasn't playing games."  That's exactly what he said.  I'll never forget that.
>
> And I yelled at him, "Meet me somewhere right now ... like you should have done yesterday."

Testimony of Edward Wiggins at Preliminary Hearing, Exhibit 14, pp. 107-08.

In his opening statement at Turner's trial, the prosecutor stated that Powers and Lowe had entered guilty pleas as accessories to the murder, and that they would testify at trial.  Prosecution's Opening Statement, Exhibit 16, p. 9.  The prosecutor stated that the phone calls made by Turner to Wiggins were made in the presence of Powers and Lowe.  *Id*.  The prosecutor stated that Turner did not know where Wiggins lived, but Powers did, and Turner forced Powers to show him.  *Id.* at 10-

11. When they arrived at the apartment complex, according to the prosecutor's opening statement, McDonald walked away, saying she did not want to have anything further to do with it. *Id*. at 11.

In his opening statement, the prosecutor also stated that he would offer into evidence recordings of the telephone messages left by Turner for Wiggins during the offense, as well as recordings of telephone calls made by Turner from jail after his arrest. *Id*. at 13-14. According to the prosecutor, in one of those phone calls from the jail after his arrest, Turner told McDonald to keep her mouth shut and to not show up in court. *Id*. at 13-14. The prosecutor stated that in another of those recorded telephone calls from the jail Turner said that Thomas Turner better not show up for court or "I will smoke his bitch ass." *Id*. at 14. And, the prosecutor said that, in another recorded telephone call from the jail, Turner spoke with McDonald about Johnson's funeral. *Id*. McDonald told Turner that, at the funeral, Johnson's relatives were saying that whoever did this deserved to die, and Turner responded, "Not as much as she did, because she's the one who did die." *Id*.

On the morning of the third day of trial, there was a delay because a juror was missing, because two jurors observed Turner being unshackled, and because an observer at the trial had spoken with a juror. *See* Exhibit 17 (ECF No. 26-3), pp. 2-6. During that delay, the court heard from the parties with regard to a defense objection to the admission of the recording of the telephone call in which Turner threatened witness Thomas Turner ("I will smoke his bitch ass."). *Id*. at 6-11. The trial court ruled the recording admissible. *Id*. at 11.

Then, after a brief recess, the parties returned and announced that the case was settled. *Id*. at 12. Turner had signed a plea agreement. *Id*.; *see also* Exhibit 1 (plea agreement). According to the plea agreement, Turner was to plead guilty to first degree murder, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). *See* Exhibit 17, p. 12-13; *see also* Exhibit 1. The State was to drop the weapon enhancement, and would recommend to the court a penalty of life in prison with the possibility of parole. *See* Exhibit 17, p. 12-13; Exhibit 1; *see also* Amended Information, Exhibit 19(H). The court canvassed Turner, and Turner entered his guilty plea. *See* Exhibit 17, pp. 13-16.

On July 30, 2002, Turner was sentenced, as contemplated by the plea agreement, to a prison

sentence of life in prison with the possibility of parole.  *See* Exhibit 2 (judgment of conviction).

Turner did not pursue a direct appeal.  Turner did, however, on August 4, 2003, file, in state court, a petition for writ of habeas corpus.  *See* Exhibits 6 and 7; *see also* Order of Reversal and Remand, Exhibit 3, p. 1.  That petition was dismissed as untimely, but the Nevada Supreme Court reversed and remanded for the state district court to conduct an evidentiary hearing on whether good cause existed to excuse Turner's untimely filing.  *See* Order of Reversal and Remand, Exhibit 3.  On remand, the district court found that there was good cause to excuse Turner's untimely filing, and the state-court habeas action proceeded.  Findings of Fact, Conclusions of Law and Order, Exhibit 5.  On August 8, 2008, after conducting an evidentiary hearing (*see* Exhibit 8 (transcript)), the state district court denied Turner's petition.  Findings of Fact, Conclusions of Law and Order, Exhibit 9.

Turner appealed, and on May 5, 2009, the Nevada Supreme Court affirmed the denial of Turner's claims that "[did] not address the voluntariness of Turner's plea or whether his plea was entered without the effective assistance of counsel...."  *See* Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, p. 3.  The Nevada Supreme Court also affirmed the denial of all but one of Turner's claims of ineffective assistance of counsel.  *See id*. at 3-18.  Regarding one claim of ineffective assistance of counsel – Turner's claim that his counsel was ineffective for failing to appeal despite his request to do so – the Nevada Supreme Court reversed and remanded for a further evidentiary hearing.  *See id*. at 18-19.  Finally, the Nevada Supreme Court affirmed the denial of Turner's claims that his plea was invalid.  *See id*. at 19-24.

On the second remand, after holding a further evidentiary hearing (*see* Exhibit 11 (transcript)), the state district court denied Turner's claim that his trial counsel was ineffective for not pursuing a direct appeal on his behalf.  *See* Findings of Fact, Conclusions of Law and Order, Exhibit 12.  The Nevada Supreme Court affirmed that ruling on September 10, 2010.  Order of Affirmance, Exhibit 13.

Turner then initiated this federal habeas corpus action.  The court received Turner's habeas petition (ECF No. 7) on October 6, 2010.  On January 19, 2011, the court entered an order

(ECF No. 6), directing that the petition be filed.  In the January 19, 2011, order, the court dismissed

several of the claims in Turner's petition, under *Tollett v. Henderson*, 411 U.S. 258 (1973), and

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, because

those claims alleged deprivations of constitutional rights that occurred prior to the entry of Turner's

plea.  Order entered January 19, 2011 (ECF No. 6), pp. 1-2.  The court dismissed Grounds 1-10, 18,

20-37, 40, 44, and 46 of Turner's petition, leaving Grounds 11, 16, 17, 19, 38, 39, 41, 42, 43, and 45

to be adjudicated.  *Id*. at 2.

On June 20, 2011, respondents filed an answer (ECF No. 13), addressing the merits of

Turner's remaining claims, and on November 23, 2011, Turner filed a reply (ECF No. 19).

Standard of Review

Because this action was initiated after April 24, 1996, the amendments to 28 U.S.C. § 2254

enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply.  *See Lindh v.

Murphy*, 521 U.S. 320, 336 (1997); *Van Tran v. Lindsey*, 212 F.3d 1143, 1148 (9th Cir.2000),

overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003).

28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the

meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

The analysis under 28 U.S.C. § 2254(d) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

With respect to questions of fact, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

<u>Analysis</u>

<u>Ground 11</u>

In Ground 11 of his habeas petition, Turner claims that, in violation of his federal constitutional rights, his trial counsel were ineffective because they "failed to investigate the fact that petitioner was undergoing psychiatric treatment and receiving psychotropic medications from arrest to conviction." Petition for Writ of Habeas Corpus (ECF No. 7), p. 28. According to Turner, "Alzora Jackson and Bret Whipple [Turner's trial counsel] had full knowledge that petitioner was undergoing psychiatric treatment and receiving psychotropic medications and never investigated petitioner's mental stability or condition." *Id*. Turner contends that "the psychotropic medications made it impossible to ... consult with [his] counselor or make a sound decision." Reply (ECF No. 19), p. 9.

1    In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two

2    prong test for analysis of claims of unconstitutional ineffective assistance of counsel:  a petitioner

3    claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's

4    representation "fell below an objective standard of reasonableness," and (2) that the attorney's

5    deficient performance prejudiced the defendant such that "there is a reasonable probability that, but

6    for counsel's unprofessional errors, the result of the proceeding would have been different."

7    *Strickland*, 466 U.S. at 688, 694.

8    With respect to this claim, the Nevada Supreme Court ruled as follows:

9            ... Turner claimed that defense counsel was ineffective for failing to
         investigate the fact that Turner was receiving psychiatric treatment and was being
10       administered the psychotropic medications Doxepin, Sinequan, and Haldol in pretrial
         detention.  He asserted that an investigation would have led his counsel to challenge
11       his competency to enter a guilty plea.

12            Turner failed to demonstrate that his counsel was deficient or that he was
         prejudiced.  A defendant is competent to enter a guilty plea if he has:  (1) "'sufficient
13       present ability to consult with his lawyer with a reasonable degree of rational
         understanding,'" and (2) "'a rational as well as factual understanding of the
14       proceedings against him.'"  *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting
         *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* 1995 Nev. Stat., ch. 637,
15       § 23, at 2458 (NRS 178.400(2)).  Nothing in the record indicates that any course of
         psychiatric treatment rendered Turner incompetent to enter a guilty plea.  Turner's
16       assertion that he was being treated and medicated at the detention center, without
         more, did not indicate that he was unable to understand the charges and proceedings
17       or assist his counsel in his defense.  While Turner's counsel acknowledged that her
         notes indicated that Turner told her he was being medicated with Haldol, she stated
18       that he did not exhibit any behavior that caused her to doubt his competency.  Further,
         at the plea canvass, Turner responded appropriately and coherently to the district
19       court's questions.  It is not apparent from the record that Turner was impaired or that
         he did not understand the district court's questions.  In the plea agreement, which
20       Turner acknowledged that he read and signed, Turner denied that he was under the
         influence of any medication that impaired his ability to comprehend the proceedings
21       against him.  Turner failed to establish a reasonable probability that, had counsel
         investigated his competency or requested a competency hearing, the district court
22       would have rejected his plea or he would have refused to enter an *Alford* plea

23       and insisted on continuing his trial.  Therefore, the district court did not err in denying
         this claim.

24

25   Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, pp. 15-16.

26            There is no evidence in the record to suggest that Turner was not competent to enter a guilty

plea -- the fact that he was being treated for a mental condition does not necessarily indicate that he

was incompetent.  The evidence at the evidentiary hearing held in state court showed that Turner's

trial counsel in fact had no reason to question his competence.  *See* Transcript of May 9, 2008,

Evidentiary Hearing, Exhibit 8, pp. 11-15, 23-27, 64, 80, 85-87; *see also* Affidavit of Counsel,

Exhibit 17A.

The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States, and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

respect to Ground 11.

Grounds 16 and 19

In Grounds 16 and 19, Turner claims that, in violation of his federal constitutional rights, his

trial counsel were ineffective because they used "methods of mental stress," and "deception and

duress" to "coerce and to confuse the petitioner on the third day of trial while trial was being delayed

to enter an *Alford* plea to first degree murder."  Petition for Writ of Habeas Corpus,

pp. 39-40, 47-50.  Turner contends:

> Bret Whipple made the petitioner believe that he was charged under the multiple defendant felony murder rule, that states:  it does not matter who actually committed the murder, that "all" defendants are guilty of first degree murder. Further, Bret Whipple made the petitioner believe that the State gave Curtis Powers and Marcus Lowe plea deals to ensure the State could convict the petitioner under the multiple defendant felony murder rule and would be able to give the petitioner the maximum sentence possible furthering the mental stress and confusion.

*Id*. at 39.

With respect to these claims, the Nevada Supreme Court ruled as follows:

> ... Turner claimed that defense counsel was ineffective for coercing him into entering an *Alford* plea.  Specifically, he stated that his counsel (1) led him to believe that he could be convicted of first-degree murder under the felony murder rule regardless of whether he actually shot the victim, (2) told him to consider that he might receive the maximum sentence considering the fact that the State gave the deal to the codefendants to testify that Turner killed the victim, (3) told him that he would

11

never get out of prison if he was convicted at trial, (4) told him that he would never receive a fair trial, (5) told him that he had good issues to appeal, and (6) told him that a trial witness's testimony corroborated the co-assailant's claim that Turner forced them to accompany him to the victim's home. Turner also claimed that his counsel was ineffective for failing to object to a trial witness's inconsistent testimony and bringing his mother and sister into the courtroom to tell him to take the deal so that he could have contact visits with his ill father. Turner failed to demonstrate that his counsel was deficient or that he was prejudiced. Turner's counsel correctly advised Turner that he could be held liable for felony murder even if he did not personally kill the victim so long as he participated in the underlying felony during which the victim was murdered. *See McKinney v. Sheriff*, 93 Nev. 70, 72, 560 P.2d 151, 152 (1977). Further, the record indicates that both of Turner's co-assailants signed agreements to testify in Turner's trial after accepting plea offers. As a conviction for first-degree murder with the use of a deadly weapon carried a possible sentence of two equal and consecutive terms of life without the possibility of parole, counsel's advice, that a conviction on those charges might mean that Turner could receive the maximum sentence and never get out fo prison, was accurate. *See* NRS 200.030(4)(b)(1); 1995 Nev. Stat., ch. 455, § 1, at 1431 (NRS 193.165). Considering the significant evidence against Turner and the substantial benefit he received with the entry of his *Alford* plea, Turner failed to demonstrate that counsel coerced him to enter an *Alford* plea. Moreover, in his plea agreement, which Turner acknowledged that he read and signed, Turner acknowledged that he was not pleading guilty as a result of duress or coercion. The district court determined that Turner failed to demonstrate by a preponderance of the evidence that his counsel coerced him to enter an *Alford* plea, and substantial evidence supports the district court's determination. *See State v. Rinconi*, 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006). Therefore, the district court did not err in denying this claim.

Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, pp. 16-17.

Here again, this court agrees with the ruling of the Nevada Supreme Court. The record reveals that Turner's counsel's advice was correct with respect to each of the matters raised by Turner in this claim. Turner certainly could have been – and, in this court's view, in all likelihood would have been – convicted of first degree murder had the trial continued to its conclusion. And, in this court's view, that is so, whether or not the jury believed that Turner, himself, fired the shot that killed Johnson. Had the trial continued to its conclusion, Turner likely would have received a prison sentence significantly more onerous than the one he is serving; every indication is that Turner's counsel was right to advise him that he likely would never get out of prison if he did not enter the plea agreement. Morever, every indication in the record is that Powers and Lowe did enter plea agreements before Turner's trial, were ready to testify against Turner at trial, and that testimony would have been powerful evidence for the prosecution.

1    There is no evidence in the record to indicate that Turner's counsel improperly coerced him

2  to enter the plea agreement.  The record shows that counsel did all they could to defend Turner, but

3  that it was in his best interest to enter the plea agreement.  *See*, *e.g.*, Transcript of May 9, 2008,

4  Evidentiary Hearing, Exhibit 8, pp. 15-21, 24-26, 28-30, 33-52, 56-59, 62-91, 95, 100-02.

5    The evidence showing Turner guilty of first degree murder was overwhelming, and there has

6  never been any suggestion that Turner had any viable defense.  The Nevada Supreme Court summed

7  it up as follows:

8       According to the State's opening statement, it would prove that Turner kicked open
        the victim's door and fired several shots into her apartment, one of which killed her.
9       The State noted that it would prove this with testimony from witnesses who saw
        Turner outside the victim's apartment shortly before the shooting; Turner's girlfriend
10      who would testify that she drove Turner, Powers, and Lowe to the victim's home; and
        Powers and Lowe who would testify to Turner's conduct.
11

12  Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, p. 20.

13    The murder was senseless and horrifying.  At the state-court evidentiary hearing, Turner's

14  counsel understandably testified as follows:

15         MS. JACKSON:  Your Honor, the record will reflect the victim in this case
        was shot in her apartment holding her month-old baby.  We had horrible facts in this
16      case, I'll never forget them, which is one of the reasons why we were so grateful for
        the plea.
17

18  Transcript of May 9, 2008, Evidentiary Hearing, Exhibit 8, p. 47, lines 18-22; *see also id*. at 75-78.

19    Turner's counsel performed competently, and wisely in this court's view, in obtaining for

20  him a sentence allowing him the possibility of parole.  In light of the record, that is more than Turner

21  reasonably could have expected had he proceeded with the trial.

22

23    The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

24  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

25  the United States, and was not based on an unreasonable determination of the facts in light of the

26  evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

13

1    respect to Grounds 16 and 19.

2         Grounds 17 and 45

3         In Ground 17, Turner claims that, in violation of his federal constitutional rights, his trial

4    counsel were ineffective because they "failed to withdraw entered plea, failed to appeal conviction,

5    failed to advise or discuss appeal rights, procedures and time frames after the petitioner diligently

6    advised counsel to appeal."  Petition for Writ of Habeas Corpus, p. 41.  In Ground 45, Turner claims

7    that his federal constitutional rights were violated because the trial court "denied petitioner the

8    constitutional right to have an appointed attorney to represent petitioner for appeal on constitutional

9    jurisdictional and appealable grounds that challenge the legality of the conviction for which

10   petitioner's liberty has wrongfully been taken."  *Id*. at 133.

11        The issue whether Turner was denied an appeal was remanded by the Nevada Supreme Court

12   to the state district court, for an evidentiary hearing.  *See* Order Affirming in Part, Reversing in Part

13   and Remanding, Exhibit 10.  On remand, after the evidentiary hearing, the state district court denied

14   those claims.  Findings of Fact, Conclusions of Law and Order, Exhibit 12.  The state district court

15   found that "Defendant did not ask his counsel to file an appeal nor should counsel have known based

16   upon what Defendant asked for that he wanted to file an appeal."  *Id*., p. 4.

17        On appeal, the Nevada Supreme Court ruled as follows:

18        Appellant failed to demonstrate that counsel was obligated to file a notice of appeal
          because appellant failed to demonstrate that he expressed a desire to appeal.  *Thomas*
19        *v. State*, 115 Nev. 17, 20, 974 P.2d 658, 659-60 (1999).  At the evidentiary hearing,
          counsel testified that she explained to appellant his appeal rights, but appellant never
20        notified her that he wished to appeal the judgment of conviction.  The district court
          determined that appellant had not expressed a desire to appeal following the entry of
21        his guilty plea, and that conclusion is supported by substantial evidence.  *Riley v.*
          *State*, 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).  Appellant failed to prove his
22        claim by a preponderance of the evidence and, therefore, appellant failed to

23        demonstrate that he was entitled to relief.  *Means v. State*, 120 Nev. 1001, 1012, 103
          P.3d 25, 33 (2004).
24

25   Order of Affirmance, Exhibit 13, pp. 1-2.

26

1    As is discussed above,  in light of the evidence presented at the preliminary hearing and

2    during the first days of the trial, and in light of the evidence that State was prepared to present during

3    the remainder of the trial, the plea agreement was favorable to Turner.  There is no reason, apparent

4    in the record, why Turner's counsel would have expected that Turner wished to attempt to withdraw

5    his plea or appeal.

6    Turner was aware of his right to appeal.  *See* Transcript of May 9, 2008, Evidentiary Hearing,

7    Exhibit 8, p. 92; Transcript of August 21, 2009, Evidentiary Hearing, Exhibit 11, p. 7; *see also* Plea

8    Agreement, Exhibit 1, p. 3, lines 16-19.  And, as the state courts found, Turner never requested his

9    attorneys to attempt to withdraw the plea or pursue an appeal.  *See* Transcript of August 21, 2009,

10   Evidentiary Hearing, Exhibit 11, pp. 7, 24, 38-40.

11   The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

12   unreasonable application of, clearly established federal law, as determined by the Supreme Court of

13   the United States, and was not based on an unreasonable determination of the facts in light of the

14   evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

15   respect to Grounds 17 and 45.

16   Ground 38

17   In Ground 38, Turner claims that, in violation of his federal constitutional rights, the trial

18   court "accepted an *Alford* plea to first degree murder while petitioner was under duress and coerc[ed]

19   by ineffective counsel."  Petition for Writ of Habeas Corpus, p. 103.  As part of

20   Ground 38, Turner claims that there was an insufficient factual basis for his plea.  *Id*. at 103, 108.

21   Also, in this ground for relief, Turner claims that the police violated his constitutional rights because

22   of the manner in which they collected a DNA sample from him.  *Id*. at 107.

23

24   The Nevada Supreme Court ruled on these claims as follows:

25       ... Turner claimed that his *Alford* plea was invalid because he counsel coerced
         him and was otherwise ineffective.  Turner failed to demonstrate that his plea was
26       invalid.  As noted above, Turner failed to demonstrate that his counsel coerced him
         into entering an *Alford* plea or that his counsel otherwise rendered ineffective

15

1    assistance.  Therefore the district court did not err in denying this claim.

2          ... Turner claimed that his *Alford* plea was invalid because there was an
      insufficient factual basis for the plea in light of his contention that he did not murder
3     the victim.  Turner failed to carry his burden of demonstrating that his *Alford* plea was
      invalid in this regard.  During the plea canvass the State proffered the entire record, in
4     particular, the preliminary hearing, the State's opening statement, and all the evidence
      introduced at trial prior to Turner's decision to change his plea, as the factual basis for
5     the guilty plea.  According to the State's opening statement, it would prove that
      Turner kicked open the victim's door and fired several shots into her apartment, one
6     of which killed her.  The State noted that it would prove this with testimony from
      witnesses who saw Turner outside the victim's apartment shortly before the shooting;
7     Turner's girlfriend who would testify that she drove Turner, Powers, and Lowe to the
      victim's home; and Powers and Lowe who would testify to Turner's conduct.
8     Further, Turner acknowledged in the plea agreement that he was not required to admit
      guilt but believed that the State could present sufficient evidence to convict him of a
9     more significant offense or more offenses at trial.  Therefore, the district court did not
      err in denying this claim.

10
          ... Turner claimed that his *Alford* plea was invalid due to duress caused by the
11    State and the justice court.

12                                    *    *    *

13
      Turner failed to demonstrate that his plea was invalid.  In his plea agreement, which
14    Turner acknowledged that he read and signed, Turner acknowledged that he was not
      entering an *Alford* plea as a result of duress or coercion.  The district court determined
15    that Turner failed to demonstrate by a preponderance of the evidence that his plea was
      coerced, and substantial evidence supports the district court's determination.  *See*
16    *State v. Rincon*, 122 Nev. 1170, 1177, 147 P.3d 233, 238 (2006).  Therefore the
      district court did not err in denying this claim.

17
          ... Turner claimed that his *Alford* plea was invalid due to the Henderson Police
18    Department's violation of his constitutional rights.  He stated that they arrested him
      and collected a DNA sample while taunting him about the lethal injection procedure.
19    He asserted that the taunting, which occurred nearly one year prior to his plea, caused
      duress that invalidated his plea.  Turner failed to demonstrate that his *Alford* plea was
20    invalid.  As discussed above, the police obtained a warrant to obtain a sample of
      Turner's DNA.  Turner failed to demonstrate that seizure of his biological evidence
21    was constitutionally infirm for any other reason.  In his plea agreement, which Turner
      acknowledged that he read and signed, Turner acknowledged that he was not pleading
22    guilty as a result of duress or coercion.  The district court determined that Turner
      failed to demonstrate by a preponderance of the evidence that his plea was coerced,
23    and substantial evidence supports the district court's determination.  *See id.*
      Therefore, the district court did not err in denying this claim.
24
      Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, pp. 19-22.
25
          This court agrees with the ruling of the Nevada Supreme Court with respect to these
26
      claims.  There is no showing in the record that Turner's decision to plead guilty was affected in any

                                          16

way by the alleged actions of the police officers who collected his DNA sample nearly a year before

the plea was entered.  With respect to the remainder of these claims, *see* the discussion above,

regarding Grounds 16 and 19.

The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States, and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

respect to Ground 38.

Grounds 39 and 41

In Ground 39, Turner claims that his federal constitutional rights were violated because the

trial court "accepted an *Alford* plea while petitioner was undergoing psychiatric treatment and while

petitioner was on psychotropic medication."  Petition for Writ of Habeas Corpus, p. 110.  In

Ground 41, Turner claims that his federal constitutional rights were violated because the trial court

"failed to hold a competency evaluation hearing prior to trial," or "prior to [accepting] the entry of an

*Alford* plea...."  *Id*. at 114.

The Nevada Supreme Court ruled as follows on these claims:

> ... Turner claimed that his plea was invalid because he was incompetent when
> he entered his *Alford* plea.  Specifically, he claimed that he was receiving psychiatric
> treatment, was under the influence of psychotropic medication, and engaged in bizarre
> courtroom behavior.  Appellant failed to demonstrate that his plea was invalid for this
> reason.  As discussed previously, Turner failed to establish a reasonable probability
> that, had his competency been investigated, the district court would have rejected his
> plea.  Therefore, the district court did not err in denying this claim.

Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, p. 22.

For the reasons discussed above, with respect to Ground 11, the court agrees with the ruling

of the Nevada Supreme Court regarding these claims.

The Nevada Supreme Court's denial of relief on these claims was not contrary to, or an

unreasonable application of, clearly established federal law, as determined by the Supreme Court of

the United States, and was not based on an unreasonable determination of the facts in light of the

evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with respect to Grounds 39 and 41.

Ground 42

In Ground 42, Turner claims that his federal constitutional rights were violated because the trial court "accepted the entry of an *Alford* plea to an amended information that is defective, misleading and confusing."  Petition for Writ of Habeas Corpus, p. 117.  Turner adds:  "Amended information violates petitioner's constitutional right to know and understand what petitioner is being convicted of and for what offence he is being convicted of for doing."  *Id*.  Turner goes on: "Petitioner entered into an *Alford* plea unknowingly, unwillingly and without understanding that he would be convicted as the culprit in the murder of Miranda Johnson.  At all times petitioner has maintained his innocence to the courts, to the state and to defense counsel that petitioner did not murder Miranda Johnson."  *Id*.

The Nevada Supreme Court ruled as follows on this claim:

> ... Turner claimed that his *Alford* plea was invalid because the amended information is "defective, misleading and confusing."  He stated that he maintained his innocence at all times and the guilty plea agreement and plea canvass did not indicate that the *Alford* plea would be a guilty plea as a "culprit" to the crime as charged in the amended information.  At the evidentiary hearing, he stated that he believed that he was pleading guilty to a charge of accessory to murder.
>
> Turner failed to demonstrate that his plea was invalid for this reason.  The plea agreement that Turner acknowledged that he read and signed provided that Turner "agreed to plead guilty, pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), to: FIRST DEGREE MURDER (Felony – NRS 200.010, 200.030), as more fully alleged in the charging document."  The amended information charged Turner with the first-degree murder of the victim as a principal or, in the alternative, as an aider and abettor under the theories of premeditated murder or murder during the perpetration or attempted perpetration of a burglary.  Further, Turner acknowledged that he was pleading guilty to the charge of first-degree murder during the plea canvass.  Moreover, as previously noted, his counsel had advised him that he could be convicted as a principal under the aiding and abetting theory.  Therefore, the district court did not err in denying this claim.

Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, pp. 22-23.

This claim by Turner is meritless.  The amended information clearly charged Turner with first-degree murder as a principal or, in the alternative, as an aider and abettor, under the theories of

1  premeditated murder or murder during the perpetration or attempted perpetration of a burglary.  *See*

2  Amended Information, Exhibit 19(H).  The plea agreement made clear that Turner would plead

3  guilty to first degree murder.  *See* Plea Agreement, Exhibit 1.  Moreover, the evidence presented at

4  the state-court evidentiary hearing on this claim revealed that Turner was advised about the nature of

5  the prosecution's case against him, and the nature of the plea he was entering.  *See*, *e.g.*, Transcript

6  of May 9, 2008, Evidentiary Hearing, Exhibit 8, pp. 42-52, 62-63, 81, 90-91.

7       The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

8  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

9  the United States, and was not based on an unreasonable determination of the facts in light of the

10  evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

11  respect to Ground 42.

12      <u>Ground 43</u>

13       In Ground 43, Turner claims that his federal constitutional rights were violated because the

14  trial court "conducted an inadequate, incomplete and defective plea canvass violating petitioner's

15  constitutional rights rendering entered *Alford* plea unknowingly, unwillingly and without

16  understanding to what exactly the petitioner was being convicted for doing, moreover, what act

17  petition is alleged to have committed."  Petition for Writ of Habeas Corpus, p. 122.

18      The Nevada Supreme Court ruled as follows on this claim:

19      ... Turner claimed that his *Alford* plea was invalid because the plea canvass
20  was inadequate and incomplete.  Specifically, he claimed that (1) the amended
information was not read into the record; (2) the plea canvass fails to specify the
victim's name, when the murder occurred, or whether Turner was pleading guilty as a
21  principal or aider and abetter; (3) the plea agreement stated that Turner did not have
to admit guilt; and (4) his counsel failed to deliver a letter drafted after the plea
22  hearing to the State in which Turner professed his innocence so that the State could
reopen the investigation.

23

24      Turner failed to demonstrate that his *Alford* plea was invalid.  The district
court informed Turner that he was pleading guilty to the charge of first degree murder
25  and Turner entered a guilty plea pursuant to *Alford* to that charge.  While the amended
information was not read into the record at the time of the *Alford* plea, it was
26  referenced in the plea agreement and Turner acknowledged that he understood that it
charged him with first-degree murder.  The amended information set forth the

19

1
2
3
4

victim's name and date of the offense.  Regardless of whether the information charged Turner as a principal or aider and abettor, a guilty plea to the information pursuant to either theory would have resulted in a conviction for first-degree murder. *See* NRS 195.020.  Although the guilty plea agreement acknowledged that Turner did not have to admit guilt, it still provided that he was entering a guilty plea.  Further, the record indicates that Turner's counsel sent his letter to the State.  Therefore, the district court did not err in denying this claim.

5   Order Affirming in Part, Reversing in Part and Remanding, Exhibit 10, pp. 23-24.

6         This claim, too, is meritless.  It is plain from the record that Turner knew that he was

7   pleading guilty to first degree murder, and he knew what the potential sentences would be.  The plea

8   agreement that Turner signed was clear in this regard (*see* Plea Agreement, Exhibit 1), and there is

9   no showing that the trial court's plea canvass was defective.  *See* Exhibit 17, pp. 13-16.  Turner's

10  guilty plea was knowing, voluntary, and intelligent.

11        The Nevada Supreme Court's denial of relief on this claim was not contrary to, or an

12  unreasonable application of, clearly established federal law, as determined by the Supreme Court of

13  the United States, and was not based on an unreasonable determination of the facts in light of the

14  evidence presented in the state-court proceedings.  The court will deny habeas corpus relief with

15  respect to Ground 43.

16  Certificate of Appealability

17        The standard for issuance of a certificate of appealability calls for a "substantial showing

18  of the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court has interpreted

19  28 U.S.C. §2253(c) as follows:

20
21
22

Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy §2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

23

24  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

25  (9th Cir. 2000).  The Supreme Court further illuminated the standard in *Miller-El v. Cockrell*,

26  537 U.S. 322 (2003).  The Court stated in that case:

20

We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail. As we stated in *Slack*, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."

*Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

The court has considered the issues raised by Turner, with respect to whether they satisfy the standard for issuance of a certificate of appeal, and the court determines that none of his claims satisfy that standard. The court will deny Turner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Clerk shall update the docket in this case to reflect that Renee Baker is substituted for her predecessor, E.K. McDaniel, as the respondent Warden of Ely State Prison.

**IT IS FURTHER ORDERED** that petitioner's Petition for Writ of Habeas Corpus (ECF No. 7) is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT ACCORDINGLY.**

**IT IS FURTHER ORDERED** that petitioner is **DENIED** a certificate of appealability.

Dated this 13th day of January, 2014.

_____
UNITED STATES DISTRICT JUDGE

21